Good morning. Good morning. May it please the Court, Counsel. My name is Tom Poydle. I represented Salmineo Bautista in the District Court. The issue in this case is whether there was reasonable suspicion to stop the vehicle on the Tohono O'odham Reservation in which Bautista was a passenger, whether there is the particularized and objective basis for suspecting criminal activity, whether there were specific and articulable facts which, with reasonable inferences, formed the basis for suspecting that the vehicle was engaged in criminal conduct, or whether the officer relied upon generalizations that, if accepted, would cast suspicion on a large segment of the law-abiding population. What this case is not about is any type of border stop. It's not about any type of traffic violation. There were no issues of that in the District Court. The sole basis for the stop in this case was the rope hanging out of the back of the trunk of the vehicle at the time it was observed by the Border Patrol at 11 o'clock in the morning on the Tohono O'odham Reservation. And the reason for the stop in this case is the fact that it was observed by the Border Patrol at 11 o'clock in the morning on the Tohono O'odham Reservation. It might have been the most significant factor or the one that the District Court thought pushed it over the line, but the District Court did cite other factors leading up to that. That's correct. And let me go into those other factors. Before you go into the factors, just let me talk to you just a little bit. It seems to me the standard of review is pretty important here. Don't I have to give pretty big deference to the District Court's findings of fact here? Well, the findings of fact would have to be found clearly erroneous. Clearly erroneous, wouldn't they? But that's not what we're arguing, that the findings of fact are clearly erroneous. What we're arguing is that the significance of those facts and whether those facts are the types of generalizations So you're therefore admitting the facts as the District Court found them. You're just saying that the District Court with those facts couldn't have found reasonable suspicion? That's correct. It's a little more complex than that. I'm not going to get into the specifics of the facts, but I will say that, for example, one of the facts that the District Court focused on was the occupants of the vehicle hiding their faces when he ñ when the border patrol agent passed them by. The border patrol agent testified that they had a cup, a drinking cup, and that he observed the driver holding the drinking cup up to his face at the time that he passed by the vehicle in the opposite direction. Wasn't it both drivers? Well, the claim was that there was another vehicle in tandem, but I can come to that in a minute. No, no, not tandem, but wasn't it both drivers were holding up a cup? Well, you mean the driver of the other vehicle that the person claimed was driving in tandem? Right. Yes, yes. But what was ñ once the cross-examination took place, it turned out, and we've provided a ñ Now, but cross-examination is really good, but I have to look at what the District Court found as facts. Right. Well, it seems to me the District Court found, first of all, stop occurred on a lonely road, well-known to be a smuggler road. The vehicle was traveling in tandem with another vehicle, consistent with smuggling activity. Both drivers appeared to be concealing their faces, and the road flapping from the car was characteristically associated with marijuana smuggling and not used to hold down the trunk. Right. May I have an answer?  I'm just saying, are they facts? They're facts, are they not? May I have an opportunity to discuss each one of those? Well, I'm just saying, are they facts? They were facts that the District Court found. Found. That's correct. And they've got to be clearly erroneous to be ñ for me to overturn them. No. The question is the significance of those facts. Also, you're just admitting the facts, and now you're saying it doesn't raise to the amount of reasonable suspicion. Correct. Okay. Well, I can hear that argument. I just don't want to hear too much about these are wrong. Right. The vehicle traveling on a lonely road in a well-known smuggling area. The vehicle was 60 or 70 miles from the border, ER 78. Route 42, which is a two-lane paved road servicing villages with morning traffic, according to the officer, ER 37. The stop was shortly before 11 a.m. in the morning. Route 15 is a ñ where the stop actually occurred, which the vehicle was first spotted on Route 42, the stop was on Route 15, is, quote, a lot busier than 42, ER 76. The vehicle was registered to ñ this is a significant fact. The vehicle was registered, and the officer knew this, the Border Patrol agent knew this, was registered to Jose Jonas Johnson, the driver who lived in Sells, which is the main town on the Tohono O'odham Reservation a few miles away. Vehicles were traveling in tandem. This, of course, is one of the facts that wasn't in the ñ in the police officer's ñ the Border Patrol agent's report, wasn't in the file. But that doesn't matter. Why is it clearly erroneous is the question. Well, that's where I ñ that's why I wanted you to focus on that. It seems to me you spend a lot of time in your brief arguing about stuff about where You've got one idea of what the evidence is, and the other party has the other. But the district courts found the facts that I have to find clearly erroneous. Right. And if I can't find them clearly erroneous, then they are calculated into the reasonable suspicion problem. Right. That's why I wanted you to talk about reasonable suspicion. All right. It seems to me he determines what the facts are, whether you like them or not. Well, the vehicles were traveling in tandem. The Chrysler stopped to pick up a hitchhiker on Route 42. No attempt whatsoever was made to investigate the Chrysler. No question was ñ was ñ were opposed to any of the occupants of the Dodge vehicle that was stopped about a vehicle ñ the other vehicle. And the case law is, in order ñ the fact that there was testimony that these vehicles were driving in tandem, I don't ñ I don't dispute that. The point is there must be some ñ in order for the significance of that fact to be used, there must be some connecting factor to establish that they were traveling together ñ the reason they were traveling together was some suspicious reason. The drivers concealing their faces, there were no ñ the testimony was there were drinking cups. There were no drinking cups found in the vehicle, ER 90 and 91. Here's where you've got to separate. You can contest whether, in fact, they had these cups in front of their faces and argue that that was a clearly erroneous finding. That's correct. But the ñ that takes you to the clearly erroneous territory, which you keep telling us you want to get back to this ñ to do these facts add up to reasonable suspicion. I suggest if you want to do that, accept the facts as found by the district court, because if you bicker with the facts as found by the district court, then you're back to clearly erroneous again. Well, that's correct. That's why ñ that's why it's a little more complex. The drinking cup situation is ñ I agree with Your Honor. That is a clearly erroneous situation. Except the fact that they were trying to conceal their faces, that this was ñ the court has to determine the significance of that, whether that's the type of ñ this ñ what was testified to was the type of evasive conduct the Supreme Court has held that was properly part of the reasonable suspicion analysis. That's ñ that's what ñ what is in issue here is the significance of them. Suppose we drop the drinking cups out of the equation. Does the determination of reasonable suspicion necessarily fall if that factor is not there? Well, you mean if I ñ if the cup situation is not ñ yes, it does. Because there ñ this was not a type of ñ I've cited the cases of Montenegro  Well, right. But I accept your point. Assume the court was erroneous in its finding that the drinking cups added to the reasonable suspicion, that this is a neutral fact. Does that necessarily mean that the other three factors that the court relied upon are insufficient? Well, I think the argument is that the other three factors suffer from the same problem. No, no. But if you take that one factor out, does it necessarily fall? You mean just that one? Right. Well, there are ñ I can't separate that from the others as well, because the others suffer from problems as well. The ñ the lonely road, that ñ that is not a significant factor, given this is on the Tohono O'odham Reservation, which is a rural area. But it's a lonely road known for drunk ñ drunk dropping, drunk drops. There has been. That's what was testified to by the agent. That's ñ that's correct. That's correct. And let me just say ñ let me save the rest of my time. But the ñ the rope, for example, Your Honors can view the rope. The ñ the rope is ñ the ñ is ñ was found by the district court to be some ñ some distinctive type of rope. Your Honors can view the rope, and it's a natural fiber rope found in many, many places and could easily have been holding down the trunk of the vehicle. But the ñ in fact, the agent testified that's what he first thought that it was doing, was holding down the trunk. Thank you. We can save the remainder of the time for rebuttal, and we'll hear from the government. May it please the Court. My name is Krissa Lanham, and I'm an assistant United States attorney, and I'm representing the government in this matter. The district court's judgment and conviction should be affirmed because there was reasonable suspicion in this case, taking the district court's facts as they were given, which this court must. Looking at the specific and articulable facts that were available to the district court here, there was tandem driving going on, according to the agent's testimony. The cars were traveling on a very lonely road that morning. And yet, they were traveling just two to three car lengths apart. The point where the cars approached the agent, the agent saw that ñ Let me ask you. It's one thing I was curious about, and it does go to the clear air standard, but it seems odd to find tandem driving when, in fact, when the agent came close, one of the cars had stopped to pick up a hitchhiker, which seems to be the antithesis of tandem driving. The agent actually explained that in his testimony. What he had said in his testimony was frequently the purpose of tandem driving is to divert law enforcement attention away from the car that actually is carrying the narcotics in the case. So he testified that frequently the car that is the spotter car, the car that's not carrying the narcotics, will actually pull over to the side of the road to attempt to divert law enforcement attention. And that is what happened here. So it actually further reinforced his idea that there was tandem driving occurring in the case. And that if the agent knows that, the agent's going to go after the car that keeps moving, which is what he did. And that's the one that has the marijuana. So ñ That was exactly what he was ñ what he did and what he was trained to do. Each car, as it was approaching the agent, each driver did attempt to take a drink in what the agent believed was an attempt to obscure each of the driver's faces, whether it was a cup or a bottle, as the district court found, and there's no suggestion that this is clearly erroneous, was really of no matter. Because what the drivers were trying to do was obscure their faces. This is an area that is a very popular spot for alien and drug smuggling. And then finally, when the agent pulled around to observe the cars and further investigate, he saw the rope flapping from the back of the car that he did end up following that did have the marijuana in it. And this was a particular type of rope that may not be distinctive to the common person, but the same type of rope that he had observed on every single marijuana bundle, and this is over a hundred marijuana bundles he testified on the Tohono O'odham Reservation. And in fact, the district court stated that if it could have found judicially noticeable the rope, that it would have, that this type of rope is very frequently used in marijuana smuggling. And the agent testified that he had never seen it in any other context. The court must take a look at these facts from the totality of circumstances approach. The defendant in this case has tried to break them up, argue, and the defendant is doing exactly what the Supreme Court in Narvisu said that should not be done in a case, which is to divide and conquer the factors. None of these factors are impermissible, and taking them all together, the district court did have the district court did appropriately find that there was reasonable suspicion to conduct an investigatory stop in the case. If there are no further questions. Suppose we drop the drinking cups or bottles out of the equation. Are the remaining facts sufficient to support the legal conclusion? We would argue that they are. We would also, though, first, with your premise, in terms of dropping the drinking cup or bottle out of the equation, it seems as though that's a credibility determination that the court made, because the agent essentially testified, if you look at the exercise record. Except that the district court was correct in finding that they were, in fact, hiding their faces with the bottle. The question is, is that neutral or is it sufficiently indicative of a desire to hide one's image from law enforcement? We believe that it is sufficiently indicative of trying to hide one's face from law enforcement, but even absent that factor, the other factors would still support reasonable suspicion in the case. If there are no further questions. Thank you. I would dispute whether we're trying to not use the totality of the circumstances approach. I would clearly want to use the totality of the circumstances approach. Those circumstances include the fact that this vehicle was registered to a tribal member who lived a few miles away from where the stop occurred, and that this was  where the stop occurred. It would not be unusual for this particular tribal member to be on that particular road on the Tohono O'odham Reservation. So those are circumstances that have to be considered as well. Finally, if that is sufficient to stop somebody on the Tohono O'odham Reservation, then there's not a whole lot left of the Fourth Amendment on the Tohono O'odham Reservation. Is there any evidence with regard to how many vehicles have ropes dangling or ropes of that kind? I wouldn't know how to look at that. I'm not sure how you do it either. I mean, that's part of the context. The agent suggests and the district court appeared to conclude this was sufficiently distinctive. I don't know. I don't know that I've ever been on the reservation and don't look for ropes when I am. So do we have anything to go on other than what the agent and the district court concluded? Well, I would remind the Court that the agent also said he first thought it was the rope was holding the trunk down. That was his first assumption. Was he entitled to follow up with further examination and make a different conclusion? Well, he did follow the vehicle and got close enough, but his claim was that he concluded that rope was not holding the trunk down because the rope was not through the keyhole in the back of the vehicle. Right. But is it a Fourth Amendment violation to follow a vehicle? Oh, no. Even if you're following it just because you see a rope you think is attached? Oh, no. The stop is the Fourth Amendment violation, not following the vehicle. So he was entitled to continue to pursue the vehicle and gather additional facts as to what the real significance of the rope was. If he develops a sufficient basis for making the stop, absolutely. But you're suggesting that he didn't have a sufficient basis to simply follow, then there's no Fourth Amendment violation in following. No. There's no Fourth Amendment violation in following the vehicle, but I've suggested that the other facts that the district court found are simply not sufficient to provide a reasonable basis for the stop. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Selna, Clifton, Smith